**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LEON FORRESTER TCHEUPDJIAN, M.D., and FORRESTER CLINIC, S.C., | ) ) ) |
| Plaintiffs, | ) |
| v. | ) ) |
| ZELTIQ AESTHETICS, INC., MARK FOLEY, and KEITH SULLIVAN, | ) ) |
| Defendants. | ) ) |

**COMPLAINT**

NOW COME Plaintiffs, LEON FORRESTER TCHEUPDJIAN, M.D. ("Dr. Tcheupdjian"), and FORRESTER CLINIC, S.C., ("Forrester"), and for their Complaint against Defendants, ZELTIQ AESTHETICS, INC. ("Zeltiq"), MARK FOLEY ("Foley"), and KEITH SULLIVAN ("Sullivan") state as follows:

**NATURE OF THE CLAIMS**

1.      Dr. Tcheupdjian and Forrester assert claims for: violations of Illinois Consumer Fraud and Deceptive Business Practice Act 815 ILCS 505/2; common law fraud; and tortious interference with prospective economic advantage.

**THE PARTIES**

2.      Forrester is an Illinois service corporation, with its headquarters and principal place of business located in Arlington Heights, Illinois. Forrester is a medical practice that is engaged in furnishing plastic surgery, liposuction, and cosmetic surgery procedures. Forrester has conducted its business under the name: "The Liposuction and Cosmetic Surgery Institute."

3.      Dr. Tcheupdjian is a resident of Illinois, and is a licensed physician who practices medicine in Illinois. Dr. Tcheupdjian is a preeminent cosmetic surgeon who specializes in liposuction/lipotherapy and related procedures, and he is President of Forrester.

1

4.      Zeltiq is a Delaware Corporation, which has its principal place of business in California. Zeltiq is a marketer and supplier of certain medical equipment and devices used in a non-surgical liposuction/lipotherapy procedure known under the registered trade name of "CoolSculpting." Zeltiq is also the marketer and supplier of certain supplies and consumables that are used in the "CoolSculpting" systems.

5.      Foley, upon information and belief, is a resident of California. Foley is and was at all relevant times President and Chief Executive Officer of Zeltiq, and is a person controlling the business practices of Zeltiq.

6.      Sullivan is, upon information and belief, a resident of California. Sullivan is and was at all relevant times Senior Vice President of Worldwide Sales for Zeltiq, and is a person controlling the business practices of Zeltiq.

**JURISDICTION**

7.      Jurisdiction of this action is based upon 28 U.S.C. §1332 (diversity of citizenship, amount in controversy exceeding $75,000.00).

**VENUE**

8.      The Northern District of Illinois is the proper venue for the claims made herein pursuant to 29 U.S.C. §1391(b)(2), because the Northern District of Illinois is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred and the conduct complained of herein occurred in the Northern District of Illinois.

**BACKGROUND**

9.      On November 15, 2010, Forrester purchased two CoolSculpting-branded Zeltiq systems, model number BRZ-CG1-CUB-110 from Zeltiq in Chicago, Illinois. The purchase of each of these two systems was accompanied with the purchase by Forrester of Zeltiq's 6.2 system, 6.3 system, and 8.0 eZ app8 system. Forrester also purchased from Zeltiq certain supplies/consumables that are necessary for operation of the Zeltiq systems; specifically, two (2) Zeltiq eZ Card6 Starter Packs – 12 cycle; and two (2) Zeltiq eZ Card8 Starter Packs – 8 cycle (hereinafter collectively referred to as "eZ Cards"). Forrester also purchased from Zeltiq two (2)

2

Zeltiq Breeze Country Kits (United States) and two (2) Support Packs – US & OUS.

10.     Forrester paid Zeltiq a total of $189,062.50 for the products listed in paragraph 9 above.

11.     From November of 2010 until November of 2012, Forrester continued to purchase and utilize eZ Cards in reliance upon both the quality of Zeltiq's products and its good faith, as a valued business affiliation of Forrester.

12.     On or about December 30, 2012, nearly two years after Forrester's original purchase of the Zeltiq systems described above, Zeltiq's authorized sales representative, T.J. Jones ("Mr. Jones"), contacted and solicited Dr. Tcheupdjian in Chicago, Illinois in an effort to sell additional eZ Cards to Forrester.

13.     During his December of 2012 solicitation of Dr. Tcheupdjian, Mr. Jones informed and represented to Dr. Tcheupdjian and Forrester that if Forrester purchased a sufficient quantity of additional eZ Cards from Zeltiq, then Forrester would qualify for "Zeltiq's *Preferred Crystal*" status.

14.     Mr. Jones further promised Dr. Tcheupdjian that Zeltiq's *Preferred Crystal* status would entitle Forrester to all rights and privileges afforded under Zeltiq's "Crystal Rewards Program."

15.     Specifically, Mr. Jones represented and warranted that if Forrester purchased the additional required number of eZ Cards, then Forrester would be fully qualified for and would achieve recognition as a Zeltiq "Preferred Provider," on the Zeltiq website.

16.     Mr. Jones also represented and warranted that Forrester would be entitled to a 50% reimbursement for its advertising costs incurred in connection with its promotion of Zeltiq CoolSculpting, also without any further qualification.

17.     At no time during his sales presentations did Mr. Jones or Zeltiq describe, identify, or suggest that Zeltiq's Crystal Rewards Program included any conditions or limitations on Forrester's absolute access to the full rights and privileges that Zeltiq promised to those who

achieved *Zeltiq's Preferred Crystal* status. Zeltiq's authorized representative Mr. Jones did not provide Dr. Tcheupdjian with any written material setting forth such conditions or limitations during the December 2012 sales solicitation.

18.     Based upon, and in complete reliance on Zeltiq's authorized representative Mr. Jones' explicit representations, on December 31, 2012 Forrester purchased two (2) eZ Card8 Packs and three (3) eZ Card6 Packs at a cost of $17,800.00. This was the quantity of eZ Card purchases required of Forrester in order for it to achieve Zeltiq's *Preferred Crystal* status.

19.     In further reliance upon Zeltiq's representations and as the newest member to achieve Zeltiq's *Preferred Crystal* status, Forrester promptly embarked upon a major marketing campaign which was designed to both introduce CoolSculpting to the Chicago market, and to drive customers to Zeltiq's website where, pursuant to Mr. Jones' promises and representations Zeltiq was supposed to list Forrester's Liposuction and Cosmetic Surgery Institute as a CoolSculpting "Preferred Provider."

20.     Only months later and after thorough investigation did Forrester and Dr. Tcheupdjian first discover that the Liposuction and Cosmetic Surgery Institute had been removed without notice from Zeltiq's website in February of 2013, two months after Mr. Jones solicited Forrester's participation in the Crystal Rewards Program.

21.     Zeltiq made no effort to provide Forrester with the "Crystal Rewards Terms and Conditions" until after Forrester had completed and paid for its purchase of the additional eZ Cards which, as Forrester was led to believe, was all that was required to guarantee the Liposuction and Cosmetic Surgery Institute's achieving of Zeltiq's *Preferred Crystal* status, and its entitlement to all of the promised benefits.

22.     Zeltiq's conduct withheld from Forrester important information in Zeltiq's possession that was highly material to Forrester's evaluation of Zeltiq's solicitation to purchase Zeltiq products.

23.     Forrester never learned of the Crystal Rewards Terms and Conditions until *after* it had fully committed and had commenced the investment of the large amount of money, time,

and effort required to effectively supply the media and marketplace with advertisements steering potential patients for CoolSculpting treatments to Zeltiq's website, where the Liposuction and Cosmetic Surgery Institute should have been listed, but was not listed, as a Preferred Provider.

24.     Totally unknown and unrevealed to Forrester beforehand, under the purported terms of the Crystal Rewards Program there were, *in fact*, substantial restrictions and limitations imposed on Forrester's ability to advertise and to price CoolSculpting treatments, which restricted Forrester's ability to promote the CoolSculpting procedure performed by Forrester's Liposuction and Cosmetic Surgery Institute.

25.     Mr. Jones, Zeltiq's sales representative, made no written or oral disclosure of any restrictions or limitations at the time of the sale to Forrester.  In particular, Forrester was given no information that Zeltiq would suddenly and without notice impose strict compliance with an undisclosed Minimum Advertised Price of not less than $600.00 for a single CoolSculpting treatment, and $1,200.00 for a multiple treatment area.

26.     On information and belief, Zeltiq's duly authorized agent was trained to and intentionally failed to disclose the restrictions and limitations.

27.     As an authorized and trained agent of Zeltiq, Mr. Jones knew or should have known that Forrester would rely upon the false representations and warranties he made on behalf of Zeltiq.

28.     Zeltiq's failure to ensure the full disclosure of all terms, conditions, restrictions, or limitations upon *Preferred Crystal* status under Zeltiq's Crystal Rewards Program constitutes a material omission in connection with the sale of Zeltiq's products.

29.     Forrester's loss of its presence on Zeltiq's website as a *Preferred Crystal* Provider had immediate devastating, far-reaching, and pervasive impact on Forrester's Liposuction and Cosmetic Surgery Institute revenue.

30.     Forrester was doubly injured by Zeltiq's conduct. Zeltiq denied the benefits Forrester had bargained for, and Forrester was supposed to obtain, from additional purchases of Zeltiq products, made in order to achieve *Preferred Crystal* status for purposes of Zeltiq's

5

Physician Locator Service. Zeltiq's conduct also stole from Forrester the benefit of Forrester's advertising and marketing program, which effectively transferred business obtained at Forrester's advertising cost to Forrester's competitors who were listed on Zeltiq's website.

31.     Zeltiq's pattern of deceptive sales practices, which was designed to induce Forrester to both contract for the purchase of additional eZ Cards, and to undertake a costly media-marketing program, caused Forrester great damage.

## COUNT I

### VIOLATIONS OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICE ACT, 815 ILCS 505/2

32.     Plaintiffs reallege and incorporates Paragraphs 1 through 31 as if fully restated.

33.     Zeltiq intentionally failed to fully disclose of all terms, conditions, restrictions, or limitations upon *Preferred Crystal* status under Zeltiq's Crystal Rewards Program constitutes a material omission and is a deceptive act or practice by Zeltiq.

34.     Zeltiq intended that Tcheupdjian and Forrester rely on Mr. Jones' material omissions, false representations and deception.

35.     The false representations, omissions and deceptions occurred in the course of conduct involving trade and commerce, within the meaning of the Illinois Consumer Fraud and Deceptive Business Practice Act 815 ILCS 505/2 *et seq*.

36.     On information and belief, Zeltiq, through Defendant Sullivan, instructed its representatives and agents to sell its product promising *Preferred Crystal* status to its customer in the market place without full disclosure of the terms and conditions of the Crystal Rewards Program associated with its sales.

37.     The conduct of Zeltiq involves trade practices directed to the market generally and otherwise implicates consumer protection concerns.

38.     As a direct a proximate result of Zeltiq's intentional misrepresentations Tcheupdjian and Forrester were irreparably harmed and damaged.

## COUNT II
## COMMON LAW FRAUD

39.     Plaintiffs reallege and incorporates Paragraphs 1 through 31 as if fully restated.

40.     Zeltiq knew that promising *Preferred Crystal* status with all of its benefits to its customer in the market place without full disclosure of the terms and conditions of the Crystal Rewards Program would induce consumers to buy more of their product.

41.     Zeltiq deliberately kept the Terms and Conditions of the Crystal Rewards Program secret from Tcheupdjian and Forrester in an effort to increase sales of its products.

42.     Forrester reasonably relied upon Zeltiq's representation, through its sales representation, of the nature of its Crystal Rewards Program and all of the requirements for *Preferred Crystal* status. Forrester further reasonably relied upon Zeltiq's acting in good faith, and in not exploiting Forrester's own advertising to transfer the benefit of Forrester's promotion of Zeltiq's CoolSculpting to Forrester's competitors.

43.     Tcheupdjian and Forrester were damaged by Defendants' failure to disclose the Crystal Rewards Terms and Conditions. Had Tcheupdjian and Forrester been contemporaneously informed of the terms and conditions of the Crystal Rewards Terms and Conditions, they would have changed their advertising campaign. Under no circumstances would Forrester invested substantial amounts in an advertising campaign, which yielded no benefit to Forrester, and only directed business to Forrester's competitors.

44.     As a direct and proximate result of Zeltiq's intentional misrepresentations Tcheupdjian and Forrester were irreparably harmed and damaged.

## COUNT III
### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

45.     Plaintiffs reallege and incorporates Paragraphs 1 through 31 as if fully restated.

46.     Forrester committed and had commenced the investment of the large amount of money, time, and effort required to effectively supply the media and marketplace with advertisements, in reliance on Mr. Jones' representations, in an effort to attract more customers.

47.     Zeltiq's removal of Forrester from its website as a *Preferred Crystal* Provider was directed towards the customers with whom Forrester expected to do business.

48.     Not only did Zeltiq's conduct deny Forrester the benefits it bargained for in good faith and guaranteed by its *Preferred Crystal* status on Zeltiq's Physician Locator Service, but its conduct also deprived Forrester of the very benefit of its advertising and marketing program, which quickly transferred to Forrester's competitors who were listed on Zeltiq's website.

49.     Zeltiq's actions constituted tortious interference with Forrester's prospective economic advantage in obtaining new patients.

50.     As a direct a proximate result of Zeltiq's intentional removal of Forrester from its website, Tcheupdjian and Forrester were irreparably harmed and damaged.

## PRAYER FOR RELIEF

Plaintiffs LEON F. TCHEUPDJIAN, M.D., and FORRESTER CLINIC, S.C. respectfully request that this Court enter judgment against Defendants, ZELTIQ AESTHETICS, INC., MARK FOLEY, and KEITH SULLIVAN in an amount exceeding $750,000.00 to be determined at trial, compensatory damages, punitive damages and for such other relief that LEON F. TCHEUPDJIAN, M.D., and FORRESTER CLINIC, S.C. are entitled to under law, and any further relief that this Court or a jury may deem just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury on all of their claims.

Respectfully submitted,

By:     /s/ Thomas J. Nitschke
                        Thomas J. Nitschke

Heather L. Blaise, Esq.
Thomas J. Nitschke, Esq.
Blaise & Nitschke, P.C.
20 North Clark Street, Suite 3100
Chicago, Illinois  60602
(312) 448-6602